**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:21-cr-377 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| FOUAD SAEED ABDULKADIR, | ) | AND ORDER |
| | ) | |
| DEFENDANT. | ) | |

Before the Court is the motion of Defendant Fouad Saeed Abdulkadir ("Abdulkadir") for release from detention pending sentencing. (Doc. No. 103 (Motion).) The government opposes the motion. (Doc. No. 105 (Opposition).) For the reasons that follow, Abdulkadir's motion is DENIED.

### I. BACKGROUND

On December 15, 2023, following a trial, a jury found Abdulkadir guilty of 24 counts of Wire Fraud, in violation of 18 U.S.C. § 1343, and two counts of Theft of Public Money, in violation of 18 U.S.C. § 641. (*See* Doc. No. 100 (Verdict).) Abdulkadir was remanded to the custody of the U.S. Marshals following the verdict. Sentencing is currently set for April 3, 2024.

Through the present motion, Abdulkadir moves for release from detention. (Doc. No. 103.) He seeks to be free on bond through sentencing. (*Id.*) In support of release, Abdulkadir reiterates that he has no prior criminal history, does not hold a passport from any county, has had no violations of his bond conditions, and has "excellent family and community support." (*Id.* at 3–4.) He also asserts that due to torture he suffered in his home country, he suffers from Post-Traumatic

Stress Disorder ("PTSD") and permanent disability resulting from injuries to his shoulder, knee, and ankle. (*Id.* at 2–3.) Finally, he states, without further explanation or examples, that other inmates have been hostile to him because of his Muslim faith. (*Id.* at 3.)

## II. GOVERNING LAW

The pending motion is governed by 18 U.S.C. § 3143(a)(1), which provides:

(a)(1) Except as provided in paragraph (2), the judicial officer shall order that a person who has been found guilty of an offense and who is awaiting imposition or execution of sentence . . . be detained, unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c).

The statute creates a presumption in favor of detention. *United States v. Poulsen*, No. CR2-06-129, 2008 WL 928566, at *1 (S.D. Ohio Apr. 7, 2008) (quoting 27 Moore's Federal Practice § 646.13 (Matthew Bender 3d ed.)) ("[T]he Bail Reform Act creates a presumption in favor of detaining a convicted defendant pending sentence or appeal."). The burden rests with a defendant to prove by clear and convincing evidence that he does not pose a danger to the community and that he is not likely to flee. *See United States v. Vance*, 851 F.2d 166, 169 (6th Cir. 1988) (quotation marks and citation omitted).

## III. DISCUSSION

In support of continued detention, the government offers several reasons why it believes that Abdulkadir is likely to flee. It notes that several days after the jury's verdict was announced, it received a call from a defense attorney stating that Abdulkadir's wife had approached him seeking paid representation for Abdulkadir. (Doc. No. 105, at 4.) As the government explains, this indicates that Abdulkadir has access to financial resources from his wife and members of his community that he did not disclose to the Court prior to the trial. (*Id.*)

2

Unsurprisingly, courts have repeatedly recognized that defendants who have significant financial means simultaneously have the ability to flee and thereby pose an increased risk of flight. *See, e.g.*, *United States v. Madoff*, 316 F. App'x 58, 59 (2d Cir. 2009) ("[T]he district court's finding that the defendant has the means−and therefore the ability−to flee was not clear error."); *United States v. Khanu*, 370 F. App'x 121, 121–22 (D.D.C. 2010) (affirming post-conviction detention order due, in part, to defendant's "extensive financial resources" and concurrent flight risk); *United States v. Poulsen*, 521 F. Supp. 2d 699, 704 (S.D. Ohio 2007) ("When one considers further the apparently substantial resources that [the defendant] has available, which could be used to finance his flight, the conclusion that he poses at least some risk of absconding becomes−no pun intended−inescapable.").

Additionally, as the government notes, Abdulkadir has crossed or attempted to cross the United States/Mexico or United States/Canada border thirteen times since June 15, 2019. (Doc. No. 105, at 4.) During a stop at the United States/Mexico border in January 2021, Abdulkadir stated that the purpose for his travel was to "scope out San Diego and Tijuana for a possible future residence in San Diego and in Tijuana for possible relocation of his restaurant business in Cleveland." (*Id.* at 4−5.)

The fact that Abdulkadir has no passport does not automatically alleviate the risk of flight. *See, e.g.*, *United States v. Bonilla*, 388 F. App'x 78, 80 (2d Cir. 2010) (affirming district court's detention order "even though [the defendant] offered some evidence to challenge the statutory presumption of flight[,]" including the surrender of his passport and having "close family" in the area); *United States v. Jinwright*, No. 3:09-cr-67, 2010 WL 2926084, at *5 (W.D.N.C. July 23, 2010) (holding that the defendant's voluntary surrender of his passport did not overcome presumption that convicted defendant posed a flight risk given the defendant's frequent

3

international travel in recent years and access to financial resources).

When the third factor cited by the government—the nature of the crimes—is factored into the equation, the possibility of flight becomes even more likely. (*See* Doc. No. 105, at 5.) While Abdulkadir points to his non-existent criminal record (*see* Doc. No. 103, at 3), the evidence at trial demonstrated that the conduct that resulted in his convictions was no momentary aberration. Rather, it was the result of years of fraudulent behavior. *See United States v. Dimora*, No. 1:10-cr-387, 2012 WL 1409396, at *3 (N.D. Ohio Apr. 23, 2013) (noting that defendant's conduct "did not involve a momentary lapse in judgment, but represented repeated, concerted acts over a number of years"); *United States v. Nicolo*, 706 F. Supp. 2d 330, 334 (W.D.N.Y. 2010) (citations omitted) (explaining that defendant's deceitful and fraudulent behavior stretched over many years and demonstrated that he could not be trusted to abide by any conditions of release); *United States v. Nouri*, No. 07-cr-1029, 2009 WL 2924334, at *2 (S.D.N.Y. Sept. 8, 2009) (noting that defendant "ha[d] engaged in dishonest and obstructive conduct including lying to [the government] himself" and had "committed fraud"). The Court is unpersuaded that Abdulkadir would not employ further deceptive conduct to elude capture.

Abdulkadir's allegations regarding his physical disabilities, PTSD, and religion-based hostility he is facing in prison (*see* Doc. No. 103, at 2−3) are not sufficient to overcome the presumption in favor of detention. As the government notes, Abdulkadir has not sufficiently substantiated his claims that being detained is exacerbating his physical pain and PTSD. (Doc. No. 105, at 3; *see* Doc. No. 103, at 3.) He has also failed to provide sufficient detail to support his claim that he is facing harassment from other inmates because of his Muslim faith. (*See* Doc. No. 103, at 3.)

4

## IV. CONCLUSION

The Court finds that Abdulkadir has failed to establish by clear and convincing evidence that he does not pose a flight risk. Based on all of the factors identified above, the Court concludes that Abdulkadir poses a significant risk of flight, and denial of his motion is appropriate. Therefore, Abdulkadir's motion for release pending sentencing (Doc. No. 103) is DENIED.

**IT IS SO ORDERED**.

Dated: January 29, 2024

**HONORABLE SARA LIOI**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**