**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:21-cr-377 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| FOUAD SAEED ABDULKADIR, | ) | AND ORDER |
| | ) | |
| DEFENDANT. | ) | |

Before the Court is the motion of defendant Fouad Saeed Abdulkadir ("Abdulkadir") for reconsideration of the Court's decision denying his motion for release pending sentencing. (Doc. No. 107 (Motion).) Plaintiff United States of America (the "government") opposes the motion. (Doc. No. 108 (Response).) For the reasons that follow, Abdulkadir's motion is DENIED.

**I.  BACKGROUND**

On December 15, 2023, following a trial, a jury found Abdulkadir guilty of twenty-four counts of Wire Fraud, in violation of 18 U.S.C. § 1343, and two counts of Theft of Public Money, in violation of 18 U.S.C. § 641. (Doc. No. 100 (Verdict).) Abdulkadir was remanded to the custody of the U.S. Marshal following the verdict. Sentencing is set for April 3, 2024.

On January 5, 2024, Abdulkadir filed a motion for release from detention. (Doc. No. 103.) In support of release, he asserted that he has no prior criminal history, does not hold a passport from any country, has had no violations of his bond conditions, and has strong family and community support. (*Id.* at 3–4.) He also stated that he suffers from Post-Traumatic Stress Disorder ("PTSD") and physical injuries, and that he was being harassed by other inmates because of his

Islamic faith. (*Id.* at 2–3.) The government opposed the motion, challenging many of the factual representations made by Abdulkadir. The Court ultimately denied this motion on the basis that Abdulkadir had not overcome the presumption in favor of detention created by 18 U.S.C. § 3143(a)(1). (*See* Doc. No. 106 (Memorandum Opinion and Order on Motion for Release), at 2–5.)

## II. DISCUSSION

When a defendant seeks release pending sentencing, the burden rests with the defendant to prove by clear and convincing evidence that he does not pose a danger to the community and that he is not likely to flee. *See United States v. Vance*, 851 F.2d 166, 169 (6th Cir. 1988) (citing *United States v. Wheeler*, 795 F.3d 839, 840 (9th Cir. 1986)). In support of reconsideration, Abdulkadir alleges several inaccuracies in the government's opposition to his motion for release. Each will be addressed in turn.

Abdulkadir first takes issue with the government's characterization of his clamed medical conditions as a "mere complaint." (*See* Doc. No. 107, at 2-3.) He insists that he has "repeatedly requested medical attention for his physical complaints[,]" but "has never been seen by medical at NEOCC." (*Id*. at 2.) He notes that he has separately filed a motion for medical care to address this purported lack of attention. (*Id*. (citing Doc. No. 104 (Motion for Medical Care).) In response to Abdulkadir's motion for medical care, however, the Court directed the U.S. Marshal Service to report regarding the medical care Abdulkadir has received since arriving at NEOCC. The Summary Report, which was made available to the parties, reflects that Abdulkadir has been seen by medical staff at NEOCC on numerous occasions. (Doc. No. 109 (Summary Report) (Sealed).) Specifically, he was seen twice in December 2023, first for an initial intake and later for an initial health screening. (*Id*. at 1.) The report further provides that he was seen by the medical unit twice

2

in January 2024 to address certain upper respiratory symptoms, and, each time, an appropriate course of treatment was determined. (*Id*.) Further, despite his representations that has only received medication for depression, the report indicates that Abdulkadir was on "quite a few" medications when he first arrived at NEOCC. Upon review, each of these medications was continued and several new medications were added. (*Id*.) As the Court determined when it denied his motion for medical care, NEOCC is adequately addressing Abdulkadir's medical needs. (*See* Doc. No. 111 (Memorandum Opinion and Order).) His medical conditions, therefore, do not provide a basis for release. *See United States v. Rodriguez*, 50 F. Supp. 2d 717, 722 (N.D. Ohio 1999) ("In any event, there is no indication that defendant's condition cannot be properly treated at the Bureau of Prison's medical facilities.").

Furthermore, Abdulkadir has failed to substantiate the existence of several of his alleged conditions, including PTSD, Depression, and ADHD. On reconsideration, he asserts that "[c]ommon sense alone dictates" that someone with his prior experiences would suffer from PTSD. (Doc. No. 107, at 2.) But this unsubstantiated representation is not sufficient to meet Abdulkadir's burden in overcoming the presumption in favor of detention pending sentencing. *See United States v. Vance*, No. 5:20-cr-63, 2023 WL 116331, at *4 (E.D. Ky. Jan. 5, 2023) (finding defendants' mere "testimony in support of their claims that their poor health constitutes a reason to release them temporarily" insufficient); *see generally United States v. Poulsen*, No. CR2-06-129, 2008 WL 928566, at *1 (S.D. Ohio Apr. 7, 2008) (noting that the burden of establishing the right to release pending sentencing rests with the defendant). Again, the Court has been informed that all of Abdulkadir's medical conditions are being addressed.

3

Abdulkadir also asserts that the government incorrectly stated that his claims of religion-based harassment are "specious". (*See* Doc. No. 107, at 2.) But he still has not substantiated the harassment he is allegedly facing at NEOCC. (*See id.* at 2–3.) While he claims that he has raised concerns with facility staff and the U.S. Marshal Service over threats he has received from other inmates, he fails to document these complaints or the responses thereto. Further, Abdulkadir concedes that, after he lodged these complaints, he was relocated to a different prison pod. (*See id.* at 2.)

Finally, Abdulkadir complains that the government "put great emphasis on the fact [that] community supporters and friends have now stepped forward to secure legal representation for him[,]" suggesting that this shows dishonesty on his part because he did not previously disclose these assets. (*See* Doc. No. 107, at 3.) He clarifies that his friends and family came forward with offers of financial assistance *after* he was convicted at trial and detained. (*Id.*) He further insists that there is nothing dishonest about the fact that his "friends [have] rallied" to his cause to help him pay for hired legal representation. (*Id.*) While this may be true, the fact remains—as the Court determined when it denied his motion for release—Abdulkadir's apparent access to financial resources places him at a higher risk of flight and counsels against release pending sentencing. *See United States v. Madoff*, 316 F. App'x 58, 59 (2d Cir. 2009) ("[T]he district court's finding that the defendant has the means−and therefore the ability−to flee was not clear error."). (*See also* Doc. No. 106, at 3 (collecting cases).)

Moreover, the facts the Court considered in its decision denying release, including Abdulkadir's numerous attempts to cross borders and the deceptive nature of his crimes (neither of which Abdulkadir addressed in his motion for reconsideration), continue to favor detention

4

pending sentencing. (*See* Doc. No. 106, at 3–4.) He has, therefore, failed to meet his burden to overcome the presumption in favor of detention pending sentencing. *See* 18 U.S.C. § 3143(a)(1); *Vance*, 851 F.2d at 169.

Additionally, the Court notes that a detention hearing "may be reopened before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f). Abdulkadir, however, has not alleged any changed circumstances that would warrant reopening the detention proceedings.[1] (*See generally* Doc. No. 107.) This provision, therefore, does not allow the Court to reopen the detention proceedings in this case.

---

[1] New and material information for purposes of § 3142(f) "consists of something other than a defendant's own evaluation of his character or the strength of the case against him; truly changed circumstances, something unexpected, or a significant event." *United States v. Jerdine*, No. 1:08-cr-481, 2009 WL 4906564, at *3 (N.D. Ohio Dec. 18, 2009) (citation omitted). The statutory provision authorizing the reopening of a detention hearing is strictly interpreted such that "hearings should not be reopened if the evidence proffered was available at the time of the hearing." *Id.* Additionally, the newly proffered information "must be of a nature that would increase the likelihood that the defendant will appear at trial and would show that the defendant is less likely to pose a danger to the community." *United States v. Watson*, 475 F. App'x 598, 600 (6th Cir. Apr. 13, 2012) (citing § 3142(f)(2)(B)). Abdulkadir has failed to come forward with any information that would qualify as new and material information sufficient to warrant reopening detention proceedings under § 3142(f).

### III.     CONCLUSION

In summary, the Court finds no basis upon which to reconsider its ruling that Abdulkadir has failed to establish by clear and convincing evidence that he does not pose a flight risk. Accordingly, Abdulkadir's motion for reconsideration (Doc. No. 107) is DENIED.

**IT IS SO ORDERED**.

Dated: February 29, 2024

**HONORABLE SARA LIOI
CHIEF JUDGE
UNITED STATES DISTRICT COURT**