# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:21-cr-377 |
| | ) | |
| | ) | |
| PLAINTIFF, | ) | CHIEF JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| FOUAD SAEED ABDULKADIR, | ) | |
| | ) | |
| | ) | |
| DEFENDANT. | ) | |

Before the Court is the *pro se* motion of defendant Fouad Saeed Abdulkadir ("Abdulkadir") to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. (Doc. No. 134.) Plaintiff United States of America (the "government") opposes the motion (Doc. No. 139), and Abdulkadir has filed a reply (Doc. No. 142) and a supplemental reply.[1] (Doc. No. 143.) For the reasons set forth herein, the motion to vacate is denied.

## I.    BACKGROUND

On May 27, 2021, an indictment issued charging Abdulkadir with 27 counts of wire fraud, 23 counts of aggravated identity theft, and 2 counts of theft of public money. (Doc. No. 1 (Indictment).) The charges were associated with Abdulkadir's alleged efforts to fraudulently obtain more than $80,000 in benefits from three different public assistance programs: Ohio's Temporary Assistance to Needy Families ("TANF"), the Supplemental Nutrition Assistance

---

[1] The reply, dated September 24, 2025, and placed on the docket September 25, 2025, was filed well beyond the August 9, 2025 deadline set by the Court in its scheduling order. (*See* Doc. No. 135 (Order), at 1.) Given Abdulkadir's custodial transfer in May 2025 (*see* I. *infra*), the Court directed the Clerk to resend any filings Abdulkadir might not have received and *sua sponte* afforded Abdulkadir additional time to file a reply. (Order [non-document], 9/25/2025.).

Program ("SNAP"), and Medicaid. (*See generally id*.)

After a five-day trial in December 2023, a jury returned guilty verdicts on 24 of the 27 counts of wire fraud and the 2 counts of theft of public money. (Doc. No. 100 (Jury Verdict).) Abdulkadir was acquitted of 3 counts of wire fraud and all of the charges of aggravated identity theft. (*See id*.) On April 3, 2024, the Court sentenced Abdulkadir to a within-guideline custody term of 21 months, followed by 3 years of supervised release. (Doc. No. 121 (Judgment); Minutes of Proceedings [non-document], 4/3/2024.)

Abdulkadir took a direct appeal, challenging the sufficiency of the evidence supporting his convictions, this Court's limitation of certain witness testimony relating to Islamic loan customs, and the reasonableness of his sentence. (Doc. No. 131 (Sixth Circuit Decision).) On January 16, 2025, the Sixth Circuit affirmed this Court's judgment and rejected on the merits each of Abdulkadir's asserted claims. (*Id*. at 1.)

On April 10, 2025, Abdulkadir filed the present motion to vacate.[2] With little or no factual development, the motion appears to raise nine separate arguments. As Abdulkadir acknowledges, the first four grounds were raised on direct appeal. (*See* Doc. No. 134, at 4, 5, 7, and 8.) They are reproduced from the motion in full:

> **Ground One**: Was there sufficient evidence to sustain a conviction for wire fraud[?]
>
> **Ground Two**: Was there sufficient evidence to sustain a conviction for theft of public money and property[?]

---

[2] The prison mailbox rule, announced in *Houston v. Lack*, 487 U.S. 266, 270–72, 108 S. Ct. 2379, 101 L. Ed. 2d 245 (1988), provides that a federal prisoner's *pro se* motion to vacate is ordinarily deemed filed on the date that it was submitted to prison mailing officials. *See Towns v. United States*, 190 F.3d 468, 469 (6th Cir. 1999). While Abdulkadir's motion was filed on the docket on June 6, 2025, the motion provides that it was placed in the prison mailing system on April 10, 2025. (Doc. No. 134, at 12.)

**Ground Three**: W[hether] the District Court committed reversible error in excluding a defense witness regarding a highly relevant Muslim custom?

**Ground Four:** W[h]ether, in any event, the sentence imposed on Mr. Abdulkadir is unreasonable and should be vacated[?]

(*Id*. at 4–8.) In response to question 13 of the form Abdulkadir used to present his motion— inquiring whether the motion raises any ground not previously raised in some federal court— Abdulkadir answered "Yes[.]" (*See id*. at 9.)

He further identified five additional grounds for relief. (*See* Doc. No. 134-3, at 1.) As was the case with the first four grounds, Abdulkadir made little effort to factually develop these asserted claims. They are reproduced here verbatim and in full:[3]

**Ground Five**: [T]he witnesses gvt. brought had ulterior motives: Mustafa was not a Board member, his membership to the Masjid was terminated, was presented under false pretense; i.e. wanted money for himself[.]

**Ground Six**: Mahmoud Amawi had ulterior motives; under penalty in civil court he was found making false accusations against Mr. Abdulkadir who the gvt. brought as a witness in criminal proceedings for the same accusations.

**Ground Seven**: Lawyer/Attorney never raised those issues[.]

**Ground Eight**: Ala Faahmi had ulterior motives confessed to treasurer of ICCW[.]

**Ground Nine**: Both board members from ICNED & ICCW issued statements & submitted letters[.]

(*Id*.) According to his motion, Abdulkadir requests that the Court "vacate [the] detainer." (Doc. No. 134, at 12.)

Abdulkadir remained in the custody of the United States Bureau of Prisons ("BOP") until May 13, 2025, when he was placed in the custody of the United States Immigration and Customs

---

[3] Abdulkadir renumbered his "new" grounds beginning with number "1", but for the sake of clarity, the Court has continued the numbering from the body of the motion.

Enforcement ("ICE") and transferred to ICE's processing center in Philipsburg, Pennsylvania. (*See* https://www.bop.gov/inmateloc/, last visited 11/10/2025; Doc. No. 141 (Notice of Change of Address).)

## II.    STANDARD OF REVIEW

A federal prisoner may attack the validity of his sentence by filing a motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255 in the district court where he was sentenced. Section 2255 sets forth four grounds upon which a federal prisoner may state a claim for relief: "[1] the sentence was imposed in violation of the Constitution or laws of the United States, or [2] that the court was without jurisdiction to impose such sentence, or [3] that the sentence was in excess of the maximum authorized by law, or [4] [the sentence] is otherwise subject to collateral attack[.]" 28 U.S.C. § 2255(a).

To prevail under § 2255, "a petitioner must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict." *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993)). "Relief is warranted only where a petitioner has shown 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *Id.* (quoting *Davis v. United States*, 417 U.S. 333, 346, 94 S. Ct. 2298, 41 L. Ed. 2d 109 (1974)).

The movant bears the burden of articulating sufficient facts to state a viable claim for relief under § 2255. *McQueen v. United States*, 58 F. App'x 73, 76 (6th Cir. 2003) (per curiam). Vague and conclusory claims that are not substantiated by allegations of specific facts with some probability of verity are not enough to warrant relief. A § 2255 motion may be dismissed if it only

makes conclusory statements without substantiating allegations of specific facts and fails to state a claim cognizable under § 2255. *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961) (citations omitted); *see Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972).

When a factual dispute arises in a § 2255 proceeding, an evidentiary hearing is required "'to determine the truth of the petitioner's claims.'" *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) (quoting *Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999)). The burden borne by a § 2255 petitioner to obtain a hearing is not onerous. *See Smith v. United States*, 348 F.3d 545, 551 (6th Cir. 2003) (citing *Turner,* 183 F.3d at 477). But a petitioner is not entitled to an evidentiary hearing if he has not alleged any facts that, if true, would entitle him to federal habeas relief. *See McSwain v. Davis*, 287 F. App'x 450, 458 (6th Cir. 2008); *Amr v. United States*, 280 F. App'x 480, 485 (6th Cir. 2008) (holding that an evidentiary hearing was "unnecessary" where there was "nothing in the record to indicate that [the petitioner] would be able to prove his allegations" at a hearing); *see also Napier v. United States*, No. 93-5412, 1993 WL 406795, at *2 (6th Cir. Oct. 8, 1993) ("To be entitled to a hearing, the prisoner must set forth detailed factual allegations which, if true, would entitle him to relief under § 2255." (citing *Machibroda v. United States*, 368 U.S. 487, 496, 82 S. Ct. 510, 7 L. Ed. 2d 473 (1962))); *Cf. Valentine*, 488 F.3d at 334 (finding that the burden is met where the petitioner "offers more than a mere assertion of his innocence; he presents a factual narrative of the events that is neither contradicted by the record nor 'inherently incredible'").

Moreover, a hearing is not necessary when a petitioner's claims "'cannot be accepted as true because they are contradicted by the record, inherently incredible, or [are] conclusions rather than statements of fact.'" *Id.* (quoting *Arrendondo v. United States*, 178 F.3d 778, 782 (6th Cir.

1999)). Where, as here, the judge considering the § 2255 motion also presided over the trial, the judge may rely on her recollections of the trial. *Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996) (citing *Blackledge v. Allison*, 431 U.S. 63, 74 n.4, 97 S. Ct. 1621, 52 L. Ed. 2d 136 (1977)).

The Court finds that an evidentiary hearing is not warranted in the present case. As set forth in detail below, Abdulkadir has failed to identify facts that, if true, would entitle him to relief under § 2255. Moreover, the arguments offered by Abdulkadir in support of the present motion are either contradicted by the record, procedurally defaulted, waived, forfeited, and/or are presented in a perfunctory and conclusory manner, preventing further review by this Court.

## III.   LAW AND DISCUSSION

### A.  Jurisdiction to Consider Removal Proceedings

To the extent Abdulkadir requests that this Court vacate the detainer previously imposed by ICE or otherwise review the immigration removal proceedings against him (*see* Doc. No. 134, at 12), the Court is without the authority and jurisdiction to do so. While Abdulkadir notes that his convictions in the present case form the basis for the ICE detainer (*see* Doc. No. 142, at 1–2; Doc. No. 143, at 1–2), a motion to vacate under § 2255 is limited to challenges to the validity of a prisoner's sentence. *See* 28 U.S.C. § 2255(a). It cannot be used to address any collateral consequences flowing from the sentence. Rather, "[c]onstitutional challenges to detention after the issuance of a final removal order are properly heard as habeas petitions brought pursuant to 28 U.S.C. § 2241." *Nassar v. Clausen*, No. 1:07-cv-1066, 2008 WL 314698, at *1 (W.D. Mich. Feb. 4, 2008) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687, 121 S. Ct. 2491, 150 L. Ed. 2d 653 (2001)). A habeas petition under § 2241 must be brought in the district where the prisoner is confined.

*Rumsfeld v. Padilla*, 542 U.S. 426, 443, 124 S. Ct. 2711, 159 L. Ed. 2d 513 (2004) (holding that, as a general rule, jurisdiction for a § 2241 petition "lies in only one district: the district of confinement"). Since Abdulkadir is confined in the Western District of Pennsylvania (*see* Doc. No. 141), he must file his § 2241 habeas petition there.[4] *See also Miller v. Mannion*, No. 1:22-cv-840, 2022 WL 3044650, at *2 (M.D. Pa. July 11, 2022) ("Courts . . . have repeatedly recognized that the Moshannon Valley Correctional Center is in the Western District of Pennsylvania[.]" (collecting cases)).

Notwithstanding the fact that Abdulkadir is no longer in BOP custody, this Court retains jurisdiction to entertain challenges to his convictions and sentence. Section 2255 provides an avenue for relief for a prisoner "*in custody* under sentence of a court established by Act of Congress[.]" 28 U.S.C. § 2255(a) (emphasis added). "Because [Abdulkadir] has yet to finish his term of supervised release and, to date, has yet to be deported, he remains 'in custody' under § 2255, and the Court has jurisdiction to address his § 2255 motion." *Oboh v. United States*, 769 F. Supp. 3d 796, 812–13 (E.D. Tenn. 2025) (collecting cases). Accordingly, the Court will address the grounds raised in the motion to vacate as they relate to Abdulkadir's convictions and sentence.

### B.  Issues Previously Raised on Direct Appeal (Grounds One through Four)

As noted, Abdulkadir's first four grounds for relief—challenging the sufficiency of the evidence, evidentiary rulings regarding witness testimony, and the reasonableness of the

---

[4] Had Abdulkadir remained in BOP custody during the litigation of the motion to vacate, any attack upon his ICE detainer would have been premature. "The United States Court of Appeals for the Sixth Circuit has concluded that a district court lacks jurisdiction over a habeas petitioner's challenge to an immigration detainer while the petitioner is still in BOP custody and is not in ICE custody." *Ri esqo Penate v. Garland*, No. 1:22-cv-460, 2023 WL 142300, at *2 (W.D. Mich. Jan. 10, 2023) (citing, among authorities, *Prieto v. Gluch*, 913 F.2d 1159, 1162–63 (6th Cir. 1990)). Now that Abdulkadir is in ICE custody, he may challenge his immigration status, though he must do so in the jurisdiction in which he is held.

sentence—were previously raised and rejected on direct appeal. "A § 2255 motion may not be used to relitigate an issue that was raised on appeal absent highly exceptional circumstances" that are not present here. *DuPont v. United States*, 76 F.3d 108, 110 (6th Cir. 1996) (quotation marks and citations omitted); *see Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999) ("[A] § 2255 motion may not be employed to relitigate an issue that was raised and considered on direct appeal absent highly exceptional circumstances, such as an intervening change in the law." (citations omitted)). Abdulkadir has not identified an intervening change in the law, or any other highly exceptional circumstances, that would permit the Court to revisit issues that were definitively decided on direct review.

In his reply, Abdulkadir suggests that although Grounds One through Four "may appear similar to those raised on direct appeal," they are different because he "now frames these issues as constitutional violations under the Fifth and Sixth Amendments, rather than mere evidentiary matters." (Doc. No. 142, at 2; *see* Doc. No. 143, at 2.) Of course, Abdulkadir conceded in his motion that these claims were previously raised on direct appeal (*see* Doc. No. 134, at 4, 5, 7, and 8), and there is nothing in his perfunctory recitation of these grounds that would suggest that they are anything other than the same issues previously raised and decided on direct appeal. Abdulkadir's hollow attempt to repackage these claims as constitutional violations is unavailing. *See, e.g., Clemons v. United States*, No. 3:1-cv-496, 2005 WL 2416995, at *2 (E.D. Tenn. Sept. 30, 2005) (finding that a prisoner may not couch previously litigated claims, such as sufficiency of the evidence, as constitutional violations to revisit them in a § 2255 motion (citing *DuPont*, 76 F.3d at 110)); *see also Stone v. Powell*, 428 U.S. 465, 494, 96 S. Ct. 3037, 49 L. Ed. 2d 1067 (1976) (constitutional claims cannot be subjected to collateral review where a defendant had a "full

and fair" opportunity to litigate them on direct appeal).

If, however, Grounds One through Four did raise new issues, they would be forfeited. A criminal defendant may not utilize a § 2255 motion as a substitute for a direct appeal. *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003); *Capaldi v. Pontesso*, 135 F.3d 1122, 1124 (6th Cir. 1998) ("An application under § 2255 . . . should not be considered a substitute for direct appeal." (citation omitted)); *see Brecht v. Abrahamson*, 507 U.S. 619, 634, 113 S. Ct. 1710. 123 L. Ed. 2d 353 (1993); *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999). "[T]he general rule [is] that claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice." *Massaro v. United States*, 538 U.S. 500, 504, 123 S. Ct. 1690, 155 L. Ed. 2d 714 (2003) (citing *Bousley v. United States*, 523 U.S. 614, 621–22, 118 S. Ct. 1064, 140 L. Ed. 2d 828 (1998); *United States v. Frady*, 456 U.S. 152, 167–68, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982)). A prisoner can also overcome a procedural default if he demonstrates that he is "actually innocent." *Regaldo*, 334 F.3d at 528 (citations omitted). The hurdle a petitioner faces to overcome a procedural default is "intentionally high[,] . . . for respect for the finality of judgments demands that collateral attack generally not be allowed to do service for an appeal." *Elzy v. United States*, 205 F.3d 882, 884 (6th Cir. 2000) (citing *Frady*, 456 U.S. at 165).

Abdulkadir has failed to clear the high hurdle of showing cause and prejudice to overcome the procedural default. He offers no arguments relative to *cause* for failing to raise any of the alleged constitutional claims in Grounds One through Four. Applying a generous construction to his briefing, the Court finds that he appears to offer a *prejudice* argument for Ground Three. Specifically, he argues that the Court's decision to preclude Nasir Abdulrahman from testifying regarding Muslim lending practices violated his constitutional right to present a complete defense

because it would have demonstrated that the "money that appeared to be income was actually part of a cultural lending practice." (Doc. No. 142, at 4; Doc. No. 143, at 4.) To the extent this evidentiary issue could be reasserted as a constitutional issue, Abdulkadir fails to explain how Abdulrahman, a lay person without "specialized knowledge, training, experience, or education" on Muslim lending practices, was qualified to offer such testimony. (*See* Doc. No. 131, at 5 (citing the district court's evidentiary ruling).) Abdulkadir was not prohibited from offering qualified expert testimony on the subject of Muslim lending practices; he was merely precluded from offering it through an unqualified lay witness in violation of Fed. R. Evid. 702. *See United States v. Lucas*, 357 F.3d 599, 606 (6th Cir. 2004) (the right to offer "a complete defense does not imply a right to offer evidence that is otherwise inadmissible under the standard rules of evidence" (citations omitted)).

Because Grounds One through Four were raised and decided on direct appeal, and they were otherwise procedurally defaulted, they are denied.

### C.  New Issues Raised in the Motion (Grounds Five through Nine)

Collectively, Grounds Five through Nine appear to attack trial counsel's failure to uncover and explore on cross-examination biases held by certain government witnesses. (*See* Doc. No. 134-3, at 1.) Claims of ineffective assistance of counsel are properly raised for the first time in a § 2255 motion to vacate. *Spearman v. United States*, 43 F. App'x 906, 908 (6th Cir. 2002) ("[T]his court has consistently held that the proper vehicle for raising an ineffective assistance of counsel claim is . . . a motion to vacate under § 2255." (citation omitted)); *see also Massaro*, 538 U.S. at 504 ("§ 2255 motion is preferable to direct appeal for deciding claims of ineffective assistance.").

"To prevail on an ineffective-assistance-of-counsel claim, [a petitioner] must satisfy the

two-pronged test announced in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)." *Wingate v. United States*, 969 F.3d 251, 255 (6th Cir. 2020). Specifically, the petitioner must demonstrate: (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant, resulting in an unreliable or fundamentally unfair outcome. *Strickland*, 466 U.S. at 687–88; *see also Williams v. Taylor*, 529 U.S. 362, 390–91, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000). The Court may address the *Strickland* prongs in any order and need not address both prongs if the petitioner "makes an insufficient showing on one." *See Wingate*, 969 F.3d at 955 (quotation marks and citation omitted).

"Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010) (citations omitted). "Judicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Id*. Counsel's performance must be evaluated from the perspective existing at the time of the representation, not from the perspective of hindsight. *Id*. Indeed, a prisoner must show that counsel made errors so serious that he was not functioning as the counsel guaranteed by the Sixth Amendment, and that counsel's errors were so serious as to deprive him of a fair trial. *Id.* at 687–88; *United States v. Hanley*, 906 F.2d 1116, 1120–21 (6th Cir. 1990); *Flippins v. United States*, 808 F.2d 16, 18 (6th Cir. 1987); *see also United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) ("Counsel is constitutionally ineffective only if performance below professional standards caused the defendant to lose what he otherwise would probably have won." (citing *Strickland, supra*)).

While Abdulkadir's ineffective assistance of counsel claims are properly before this Court, they each fail for a number of reasons.

### 1. Ineffective Assistance Claims are Conclusory

First, each ground is raised in the motion to vacate in conclusory fashion, impeding any merits review by this Court. While Abdulkadir surmises, without support, that certain witnesses had "ulterior motives", he fails to sufficiently detail what those motives were and how his counsel should have known of their existence. (*See* Doc. No. 134-3, at 1.) Likewise, he claims that Mahmoud Amawi testified in a separate proceeding that he made false accusations against Abdulkadir, but he fails to produce this testimony or even identify the separate proceeding in which these alleged confessions were made. (*See id.*) Such perfunctory treatment of a ground fails to state a viable claim for relief under § 2255. A motion to vacate may be dismissed if it only makes conclusory statements without substantiating allegations of specific facts. *Thomas v. United States*, 849 F.3d 669, 679 (6th Cir. 2017) ("A party waives issues that he adverts to in a perfunctory manner, unaccompanied by some effort at developed argumentation." (citation omitted)); *see United States v. Sandridge*, 385 F.3d 1032, 1035–36 (6th Cir. 2004) (similar) (citation omitted); *McPhearson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court . . . to put flesh on its bones." (quotation marks and citations omitted)).

In his reply, Abdulkadir attempts to develop these claims, but, even then, his belated arguments fall short. He suggests that trial counsel should have: "question[ed] Witness A about financial incentives related to [p]etitioner's conviction[,]" "introduce[d] evidence of Witness B's false prior accusations in similar contexts[,]" and "question[ed] Witness C about contradictory

statements made in other proceedings." (Doc. No. 142, at 3; Doc. No. 143, at 3.) Yet, Abdulkadir

fails to describe the financial incentives, identify the prior false accusations, or produce (or even

describe) the contradictory statements made in other proceedings. He also fails to explain how any

of these lines of questioning would have changed the result at trial. The lack of any details to flesh

out these claims is contrary to Rule 2 of the Governing Rules for § 2255 Motions, which requires

a motion to "specify all grounds for relief available to the moving party" and "state the facts

supporting each ground." A habeas petition which fails to state the supporting facts is legally

insufficient on its face and may be dismissed. *Slyton v. United States*, No. 1:00-cr-27, 2011 WL

1364049, at *2 (E.D. Tenn. April 11, 2011) (citing, among authority, *Wingo*, 454 F.2d at 53;

*O'Malley*, 285 F.2d at 735); *see also Pillette v. Berghuis*, 408 F. App'x 873, 887–88 (6th Cir.

2010) (speculation that a witness would provide favorable testimony cannot establish "either

unreasonable performance or prejudice").[5]

### 2. *Ineffective Assistance Claims Fail on the Merits*

Second, even if these claims were not conclusory—and although a failure to properly cross-

examine a witness could form the basis for a finding of ineffective assistance, *see Jackson v. Houk*,

687 F.3d 723, 742–43 (6th Cir. 2012)—such decisions typically are not subject to second guessing

and are entitled to be presumed sound trial strategy. *See Dunham v. Travis*, 313 F.3d 724, 732 (2d

Cir. 2002) ("Decisions about 'whether to engage in cross-examination, and if so to what extent

---

[5] In his reply brief, Abdulkadir also offers for the first time an argument that counsel failed to present "critical documentary evidence" that would have "directly refuted the Government's theory of the case." (Doc. No. 142, at 2; Doc. No. 143, at 2.) He only describes the documents in general terms, however, referring to "[n]otarized documents specifying the loans that were given to [p]etitioner," documents "submitted to Job and Family Services showing [p]etitioner's business and income situation," and "[b]usiness tax forms and personal tax returns that would have clarified [p]etitioner's actual income and financial status." (*Id*. at 2–3.) Even if it were appropriate for the Court to consider an argument raised for the first time in a reply brief (*see* III. D. *infra*), Abdulkadir has failed to identify these documents with any specificity or explain how they would have led to a different result at trial.

and in what manner, are . . . strategic in nature' and generally will not support an effective assistance of counsel claim." (quoting *United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir. 1987)); *see also United States v. Friedman*, 7 F.3d 235 (Table), Nos. 92-3916, 92-3917, 1993 WL 386797, at *3 (6th Cir. Sept. 30, 1993) ("[T]actical decisions must be particularly egregious before they will provide a basis for relief." (citing *Martin v. Rose*, 744 F.2d 1245, 1249 (6th Cir. 1984)).

Here, the record is clear that defense counsel thoroughly cross-examined each witness Abdulkadir claims had an ulterior motive. (Doc. No. 93 (Trial Transcript), at 60–62, 99–102, 161–194.) There is nothing in the record to suggest that counsel did not exercise sound strategy in fashioning and executing their cross-examination of these witnesses. Trial counsel's performance is not deficient simply because their efforts were ultimately unsuccessful in persuading the jury. *See also Hodge v. Haeberlin*, 579 F.3d 627, 645 (6th Cir. 2009) (finding that counsel's performance did not "f[a]ll below the standard set in *Strickland* merely because counsel was unable to persuade the trial court to rule in [the defendant's] favor"). Abdulkadir has not adduced any evidence to overcome the presumption that his counsel exercised sound trial strategy, and, as a result, he has not shown any deficiency in his counsel's performance.

For all of these reasons, Grounds Five through Nine are denied.

### D.  Issues Raised in the Reply Brief

Abdulkadir also appears to raise several new claims in his reply brief. In particular, he argues for the first time that the government withheld evidence regarding its witnesses' ulterior motives for testifying, and that the Court did not afford new counsel sufficient time to prepare for trial. (Doc. No. 142, at 4; Doc. No. 143, at 4.) It is well settled that matters raised for the first time in a reply brief are waived or forfeited. *Sanborn v. Parker*, 629 F.3d 554, 579 (6th Cir. 2010); *see*

*United States v. Crozier*, 259 F.3d 503, 517 (6th Cir. 2001) ("We will generally not hear issues raised for the first time in a reply brief" (citation omitted)); *Hunt v. Big Lots Stores, Inc.*, 244 F.R.D. 394, 397 (N.D. Ohio 2007) (citations omitted)); *see, e.g., Killian v. United States*, No. 1:13-cr-33, 2018 WL 1475607, at *3 (E.D. Tenn. Mar. 26, 2018) (finding issue of ineffectiveness raised for the first time in a reply brief in support of a motion to vacate waived (citations omitted)); *Hadley v. United States*, No. 1:06-cr-5, 2010 WL 2573490, at *6 (W.D. Mich. June 22, 2010) (declining to address an additional effective assistance of counsel claim because it was raised for the first time in a reply brief (citations omitted)). For this reason alone, these claims are denied.

Even if the Court reached these claims, however, they would fail. In support of his claim under *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1966), Abdulkadir cites the legal standard for asserting a *Brady* violation, but fails to offer any factual development of this ground for relief. (Doc. No. 142, at 4 (citing *Giglio v. United States*, 405 U.S. 150, 154, 92 S. Ct. 763, 31 L. Ed. 2d 104 (1972) (holding that evidence affecting a witness's credibility falls within the *Brady* rule when "the reliability of a given witness may well be determinative of guilt or innocence")); Doc. No. 143, at 4 (same).) In particular, he neglects to identify the evidence in the government's possession that would have shed light on its witnesses' alleged ulterior motives for testifying against Abdulkadir. As previously noted, a lack of any details to flesh out a claim violates the rules governing § 2255 motions, and is legally insufficient on its face to support any relief. *See McFarland*, 512 U.S. at 856.

As for his claim that the Court afforded new counsel insufficient time to prepare (*see* Doc. No. 142, at 3; Doc. No. 143, at 3), the record offers no support. Abdulkadir retained and discharged numerous attorneys during the course of this case. At the request of his various attorneys, the Court

15

granted a number of extensions, including extensions designed to afford new counsel sufficient time to prepare. (*See* Order [non-document], 1/19/2022; Order [non-document], 2/28/2022; Order [non-document], 4/15/2022; Order [non-document], 5/20/2022; Minute Order [non-document], 6/2/2022 (extending dates and deadlines to accommodate new counsel); Doc. No. 34 (Ends of Justice Order) (same); Doc. No. 40 (Ends of Justice Order) (extending all dates and deadlines)); Doc. No. 48 (Ends of Justice Order) (extending various dates and deadlines).)

When Abdulkadir's last retained attorney—Kevin Cafferkey—moved to withdraw for personal reasons (*see* Doc. No. 51), the Court held a hearing on the motion. (Minutes of Proceedings [non-document], 9/5/2023.) At the conclusion of the hearing, the Court granted the motion to withdraw and appointed Attorney Darin Thompson of the Federal Public Defender's Office to represent Abdulkadir. (*Id.*; *see* Order [non-document], 9/5/2023 (appointing FPD Darin Thompson).) Thereafter, the Court conducted two telephonic conferences with the government's attorney and Attorney Thompson to discuss the additional time defense counsel would need to prepare for trial. (Minutes of Proceeding [non-document], 9/12/2023; Minutes of Proceeding [non-document], 9/19/2023.) After conferring with counsel, the Court granted Attorney Thompson's unopposed motion to continue the dates and deadlines in the case, which had the effect of extending the trial date by one month. (Doc. No. 57 (Ends of Justice Order); Doc. No. 58 (Third Amended Trial Order); *see* Doc. No. 56 (Motion).) The Court subsequently granted a second motion from defense counsel to further extend the dates and deadlines in the case, which resulted in a second 30-day continuance of the trial date. (Minutes of Proceedings [non-document], 10/20/2023; Doc. No. 68 (Ends of Justice Order); *see* Doc. No. 67 (Motion).) Defense counsel made no further requests to extend the trial.

16

Moreover, there is no evidence that defense counsel was unprepared for trial. Rather, the record is clear that Attorney Thompson, who was joined at trial by Federal Public Defender Stephen Newman, was thoroughly prepared and both attorneys provided Abdulkadir effective assistance throughout the trial and at sentencing. Because Abdulkadir has failed to demonstrate that his counsel was given insufficient time to prepare for trial, his claims that the Court abused its discretion would fail on the merits.

## IV.    CONCLUSION

For the foregoing reasons, Abdulkadir's motion to vacate, set aside, or correct his sentence (Doc. No. 134) is denied. Further, for the same reasons, the Court concludes that "jurists of reason" would not find it "debatable whether the petition states a valid claim of the denial of a constitutional right" or that the Court's findings that Abdulkadir's claims are either waved, forfeited, procedurally defaulted, or alluded to in a perfunctory manner, thus precluding further review, are "correct[.]" *See Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000). Additionally, the Court has detailed above why Abdulkadir's grounds for relief are otherwise belied by the record such that "reasonable jurists" would not debate the Court's denial of his motion to vacate. *See Slack*, 529 U.S. at 484. Accordingly, the Court certifies that an appeal from this decision could not be taken in good faith, and that there is no basis upon which to issue a certificate of appealability. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

**IT IS SO ORDERED**.

Dated: November 10, 2025

_____
**HONORABLE SARA LIOI**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

17